

Priority ___
Send ✓
Enter ___
Closed ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**MINUTE ORDER**

Case No.: CV-00-08635-CAS (Ex)                                June 25, 2001

Title:   SHOOSHAN GEORGE v. OK!, NORTHERN & SHELL PLC, et al.

---

PRESIDING:     HONORABLE CHRISTINA A. SNYDER, U.S. DISTRICT JUDGE

Maynor Galvez,                                              Laura Elias
Deputy Clerk                                                Court Reporter

| THIRD-PARTY PLAINTIFF COUNSEL PRESENT: | THIRD-PARTY DEFENDANT COUNSEL PRESENT: |
|---|---|
| Scott J. Tepper | J.J. Little |

PROCEEDINGS:   THIRD PARTY PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THIRD-PARTY COMPLAINT (filed May 21, 2001)

### I.  BACKGROUND

This case concerns the publication of a photograph of plaintiff, Shooshan George, in the magazine OK!, published by defendant Northern & Shell, PLC, a United Kingdom corporation ("Northern & Shell"). Plaintiff filed suit in Los Angeles Superior Court on August 2, 2000, and defendant filed a notice of removal to federal court on August 14, 2000. Plaintiff's first amended complaint ("FAC"), filed August 30, 2000, sets forth the following claims for relief:  (1) publication of private facts and conspiracy to commit the same; (2) intrusion and conspiracy to commit the same; (3) violation of the right of privacy and conspiracy to commit the same; (4) appropriation of name and likeness and conspiracy to commit the same; and (5) copyright infringement.

On October 10, 2000, defendant Northern and Shell filed a third-party complaint ("TPC") against Boris Nizon and Fame Pictures. The TPC alleges that Nizon and/or Fame Pictures, a business entity controlled by Nizon, sold the photograph of

S:\Orders\CIVIL\2000\00-08635.3.wpd

George to Northern & Shell, and that Northern & Shell is entitled to be indemnified by Nizon or Fame Pictures for any liability to George based on the publication of the photograph.

George and Northern & Shell filed a notice of settlement of George's claims on January 12, 2001. The Court entered an order dismissing George's action with prejudice on February 2, 2001, pursuant to the parties' stipulation.

The parties are now before the Court on Northern & Shell's motion for partial summary judgment on the third-party complaint against Nizon and Fame Pictures.[1] Northern & Shell requests an adjudication only upon the issue of liability.

## II.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. See Fed. R. Civ. P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990). See also Celotex Corp., 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of

---

[1] It appears that Fame Pictures is not a corporate entity. See Nizon Depo. at 14:8-9 ("the name Fame Pictures--what is it called, dba in English?").

proof at trial." Id. at 322. See also Abromson v. American Pacific Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## III. FACTS

The following facts are undisputed:

On February 20, 2001, Nizon submitted responses to Northern & Shell's requests for admission. Nizon's responses included the following:

> Request No. 1. In late July or early August 1998 Boris Nizon sold to Northern & Shell's OK! Magazine ("OK! Magazine") certain rights to the photograph which was published in OK!'s August 14, 1998 issue depicting Courteney Cox and Shooshan George ("the Photograph").
>
> Response to Request No. 1. Admit.
>
> Request No. 2. Boris Nizon did not own any rights to the Photograph.
>
> Response to Request No. 2. Admit.
>
> Request No. 3. Prior to the date on which Boris Nizon sold the rights to OK! Magazine to the Photograph Nizon had been informed that Shooshan George contested his rights in the Photograph.

Response to Request No. 3. Deny.

Request No. 4. At the time Nizon sold the rights to the Photograph to OK! Magazine he did not tell the person at OK! Magazine with whom he dealt that he (Nizon) did not have the rights he was selling.

Response to Request No. 4. Admit.

Decl. of Scott Tepper in Supp. of Mot. for Summ. J., Ex. A.

On January 11, 2001, George and Northern & Shell entered into a agreement to settle George's claims set forth in the FAC. The settlement agreement contains the parties' general releases of all claims against each other, and states that Northern & Shell shall pay George $30,000. The settlement agreement does not allocate portions of the $30,000 payment to particular claims in the FAC. Decl. of J.J. Little in Opp'n to Mot. for Summ. J., Ex. B.

## IV. DISCUSSION

The TPC alleges in part as follows:

> 4. If third party plaintiff is found liable to plaintiff . . . as a result of the incidents and occurrences alleged in plaintiff's first amended complaint, third party plaintiff's liability would be based solely upon a derivative form of liability not resulting from third party plaintiff's conduct, but only from an obligation imposed on it by law, or otherwise. Therefore, third party plaintiff is entitled to complete indemnity, including payment of its attorneys' fees, from each third party defendant.
>
> 5. Third party plaintiff innocently purchased the photograph the subject [sic] of the copyright claim in the principal action from third party defendants, who represented to third party plaintiff that they owned and had the right to sell the same.

TPC ¶¶ 4-5.

The TPC thus does not present any particular legal theory or cause of action as a basis for the contention that Nizon is obligated to indemnify Northern & Shell. In the instant motion, however, Northern & Shell offers the theory that Nizon is liable for breach of an implied warranty of good title as set forth in § 2312 of the California Commercial Code. Northern & Shell cites Recorded Picture Co. v. Nelson Entertainment, Inc., 53 Cal. App. 4th 350, 366 (1997) for the proposition that copyright transactions are governed by the California Commercial Code. According to Northern & Shell, Recorded Picture states that a copyright mortgage lien is an interest in goods and thus is a basis for a UCC-1 filing under California law. Northern & Shell argues that this implies that the sale of a copyright is a sale of goods or an interest in goods to which the California Commercial Code applies. Accordingly, Northern & Shell argues, Cal. Comm. Code § 2312 applies to Nizon's sale of the photograph. Section 2312 provides that in a contract of sale, the seller impliedly warrants that "[t]he title conveyed shall be good and its transfer rightful," and that "[u]nless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like." Cal. Comm. Code § 2312(1), (3). Northern & Shell contends that, on the basis of the admitted facts, Nizon breached this implied warranty when he sold the photograph without informing Northern & Shell of any third party's rights or of any defect or limitation in Nizon's rights.

Northern & Shell's argument fails to show the absence of triable questions of fact for several reasons. First, Northern & Shell misstates the holding of Recorded Picture. In that case, a movie producer filed a UCC-1 financing statement regarding a security interest in "goods, chattels, property, equipment, accounts, contract rights, and general intangibles" related to a certain motion picture. 53 Cal. App. 4th at 366. The producer also filed a copyright mortgage on the motion picture with the United States Copyright Office. Id. at 365. The UCC-1 thus had nothing to do with the copyright mortgage. Therefore, Northern & Shell has cited no authority in support of the proposition that provisions of the California Commercial Code apply to copyright

transactions or that interests in copyrights are goods or interests in goods within the meaning of the Code.[2]

Second, even if Northern & Shell is correct that § 2312 of the California Commercial Code applies to copyright transactions, the undisputed facts do not show that Nizon's sale of the photograph to Northern & Shell was a copyright transaction. It is, of course, not the case that every sale of a copy of a copyrighted work is a purported sale of the copyright; a bookstore, for example, purports to sell copies of books, not copyrights to the works contained therein. The sale of such a copy obviously does not include an implied warranty that no third party owns rights in the work, and the seller is not obligated to indemnify the buyer if the buyer is subsequently sued for infringing the copyright. The undisputed facts on which Northern & Shell relies are that Nizon sold it the photograph, did not own the copyright, and omitted to state that he did not own the copyright. On the basis of these facts, and assuming _arguendo_ that § 2312 applies, it is possible to conclude no more than that there was an implied warranty that no third party owned rights to the individual copy of the photograph sold, just as a bookseller impliedly warrants no more than that the individual copy of a book it sells is free of third parties' interests.[3] In other

---

[2] Cf. 3 _Nimmer on Copyright_ § 10.03[A][8] (1999) (discussing preemption of some aspects of state contract law by the Copyright Act, and warning of "the perils of applying the Uniform Commercial Code to contracts that govern copyright ownership").

It is clear in any event that § 2312(3), pertaining to implied warranties by merchant sellers, does not apply to third parties' copyright claims. Section 2312(3) is identical to § 2-312(3) of the Official Text of the Uniform Commercial Code. The scope of § 2-312(3) of the UCC "is limited to a warranty by a merchant seller that his goods are not subject to a valid third party claim based on patent or trademark infringement." California Code Comment, § 2312 (citing UCC § 2-312 Official Comment 3).

[3] In fact, it appears to be undisputed that a third party
(continued...)

words, the admitted facts do not show that the transaction was a transaction for rights in the work, as opposed to ownership of the individual copy.[4]

Third, Nizon has submitted excerpts of the transcript from his deposition in which he states that he told the Northern & Shell representative to whom he sold the photograph that he was "just brokering" the photograph. Nizon Depo. at 23:13-16. Nizon argues that this statement shows that he put Northern & Shell on notice that he did not know who owned the copyright on the photograph, did not purport to transfer the copyright to Northern & Shell, and was not warranting that the copyright was free of third-party interests. The Court concludes that this testimony constitutes evidence that gives rise to a triable question of fact regarding whether Northern & Shell was entitled to rely on

---

[3] (...continued)
did have an interest in the individual copy of the photograph, because it appears to be undisputed that the individual copy of the photograph was stolen. See Nizon Depo. at 55:10-14 ("everybody here and everybody else knows exactly that Victor Odonez stole the pictures from the lab, and they were then passed along to Alain Rolland, and they then were passed to me"). But Northern & Shell does not contend that it incurred losses to which it is entitled to indemnity because it purchased stolen property; rather, it contends that it incurred losses because it became liable for copyright infringement as a result of Nizon's breach of an alleged implied warranty that Nizon could transfer a valid copyright.

[4] Furthermore, neither party has submitted evidence of a written contract purporting to transfer copyright ownership. Under the Copyright Act, a transfer of copyright ownership must be in writing. 17 U.S.C. § 204(a). Northern & Shell cannot prevail on a claim for indemnity based on an alleged implied warranty in a contract for a transfer of copyright ownership if no such contract was ever formed pursuant to the requirements of the Copyright Act. A nonexclusive copyright license may be granted orally, see 3 Nimmer on Copyright § 103.03[A][7] (2000), but there is no evidence in the record from which the Court could infer as a matter of law that Nizon and Northern & Shell entered into an oral agreement to grant a nonexclusive copyright license.

the transaction with Nizon in concluding that it had obtained the necessary rights to publish the photograph.[5] Further, Nizon's statements in his deposition are not necessarily inconsistent with his statement in his responses to requests for admission that "he did not tell the person at OK! Magazine with whom he dealt that he (Nizon) did not have the rights he was selling," Decl. of Scott Tepper in Supp. of Mot. for Summ. J., Ex. A. Nizon could, without inconsistency, both have omitted to state that he did not own such rights and have stated that he was only brokering the photograph.[6]

---

[5] In it reply brief, Northern & Shell quotes the following passage from Nizon's deposition transcript:

Q: Did you sell any rights to this photograph to OK! Magazine in August 1998?

A: I agreed for $150 that they can use the picture.

Q: And publish it, correct?

A: Yes.

Nizon Depo. at 27:17-22. Northern & Shell argues that these statements show that Nizon represented to it that he owned the copyright and intended to transfer it when he sold the photograph. The statements quoted do not suffice to establish this, however. To say that "they can use the picture" and publish it could indicate only an intent to transfer whatever rights the speaker may have; and Nizon contends that this is what he meant.

[6] In his declaration, Nizon's counsel appears to make a request to withdraw Nizon's response to the request that he admit that he did not inform Northern & Shell that he did not own the copyright to the photograph. The declaration states: "I would (and do, if necessary) request that Mr. Nizon be permitted to withdraw the subject response." Decl. of J.J. Little ¶ 7. A request for leave to withdraw a response to a request for admission may not properly be made in a declaration in support of an opposition to a motion for summary judgment. If the request

(continued...)

Fourth, Nizon states in a declaration that he sold the photograph to Northern & Shell for $150 because he was unable to confirm copyright ownership, and that if he had been able to provide a warranty of copyright ownership, the photograph would have been worth approximately $2,000.  Nizon Decl. ¶ 3.  Nizon argues that the low price would indicate to a knowledgeable buyer such as Northern & Shell that copyright was not being transferred.  Nizon also states in his deposition that the photograph depicted George and Cox inside what appears to be a private residence, and that "[p]hotographs of such a homestyle nature are not, as a matter of custom and practice in the news agency industry, sold in commerce for publication.  On their face, such photographs are of a personal nature and therefore always carry some risk that copyright/title problems will surface upon commercial publication."  Nizon Decl. ¶ 4.  Nizon argues that a knowledgeable buyer would be placed on notice by the nature of such a photograph that rights might have to be obtained from a third party before the photograph could be legally published.  The Court concludes that the statements in Nizon's declaration give rise to triable questions of fact regarding whether Northern & Shell could reasonably conclude that it had purchased the copyright from Nizon, as opposed to merely the individual copy of the photograph.

Finally, the settlement agreement does not indicate how much of the $30,000 payment is intended to settle the copyright claim, and how much is intended to settle the other claims in the FAC, and there is no other evidence in the record regarding this question.  Northern & Shell requests summary judgment only as to liability, not as to damages, but no purpose would be served by granting summary judgement regarding liability under circumstances in which there a triable question regarding whether the damages will be significant.  Here, there is no evidence of the value of the copyright on the photograph or of the value of the other claims.  It would not be inconsistent with the present

---

[6](...continued)
had been made properly, moreover, it would be denied.  In the same paragraph as the request, counsel states that "[t]he question was specific and Mr. Nizon answered it honestly."  If the answer is honest, there is no reason to permit its withdrawal.

record if the copyright claim standing alone should be shown to have little or no settlement value and the settlement value of the other claims should be shown to be substantial. Northern & Shell also argues that it is entitled to attorney's fees if Nizon is liable as a result of a copyright violation, and that the Court could grant summary judgment on this basis even if there is a triable question of fact regarding whether the copyright violation resulted in any damages. But because the Court concludes that there are triable questions regarding whether Nizon is liable at all, it would not be appropriate to grant summary judgment on the basis of attorney's fees.

## V. CONCLUSION

For all the reasons set forth herein, third-party plaintiff Northern & Shell's motion for partial summary judgment is DENIED.

IT IS SO ORDERED.